WILLIAM WASHBURN *vs.* GEORGE W. PHILLIPS & others.

The court will exercise its authority to issue writs of prohibition to courts of inferior jurisdiction, only in cases where such courts clearly exceed their jurisdiction.

A court martial has jurisdiction of charges against a commanding officer of a volunteer company of militia for neglect or violation of the duty imposed on him, by *St.* 1840, *c.* 92, to certify to the town or city treasurer, yearly, a list of all the members of his company who, through the preceding year, have performed all the duties required by that statute.

PETITION for a writ of prohibition. The petitioner alleged that he was, and for two years last past had been, captain of a vol unteer company of militia, called the Suffolk Light Guard, attach ed to and forming a part of the first regiment, in the first brigade of the first division of the militia of this Commonwealth : That on the 6th day of March, 1841, certain charges, and specifications thereof, were preferred against him, and forwarded to the major general commanding the said first division ; that the petitioner was thereupon placed in arrest, and that a division court martial was ordered, by said major general, to convene for the trial of the petitioner on said charges : That said court, of which Col George W. Phillips was president, assembled, according to or- ders, and was organized on the 27th of said March, and that the aforesaid charges, and specifications thereof, (which were set forth in the petition,) were then read to the petitioner, and that he thereupon interposed a plea to the jurisdiction of said court ; but that said court "ruled that they had jurisdiction," and ordered the petitioner "to appear and make defence." Wherefore the petitioner prayed to be relieved, and that he might "have a writ of prohibition directed to the president, and each member of said court martial, to prohibit him and them from taking any further cognizance of the said matters of charge against him before them, and touching or concerning the premi- ses."

The charges against the petitioner, which the court martial held to be cognizable by them, and also the grounds on which the petitioner denied the jurisdiction of that court, sufficiently appear in the opinion given by the chief justice.

Washburn *v.* Phillips & others.

SHAW, C. J. The application to this court for a writ of prohibition is certainly one of rather new impression, and seems to have been rarely resorted to, either in this Commonwealth or either of the United States. But this, so far from affording a reason why it should not be fully examined, rather requires that it should be considered with great care and attention, as establishing an important precedent. This court is expressly authorized to issue writs of prohibition. Rev. Sts. *c.* 81, §§ 4, 5. The origin of this jurisdiction is found in the provincial statutes of 4 and 11 William III. The first of these acts provided for the establishment of " a superior court of judicature over this whole province," with large but not very definite powers. Anc. Chart. 220. The second of these acts, after enacting that there should be a superior court of judicature, of five justices, and conferring on them jurisdiction, in very broad terms, over subjects civil and criminal, and over actions real, personal and mixed, brought before them by appeal, review, writ of error or otherwise, added, " and generally of all other matters as fully and amply, to all intents and purposes whatsoever, as the courts of king's bench, common pleas and exchequer, within his majesty's kingdom of England, have or ought to have." Anc. Chart. 330. 331. The constitution, both in its declaration of rights, and frame of government, recognizes and provides for a supreme judicial court. One of the first acts passed under the constitution, *St.* 1780, *c.* 17, provided that the supreme judicial court of this Commonwealth should have cognizance of all such matters, as by particular laws were made cognizable by the late superior court of judicature, court of assize and general jail delivery, unless where the constitution had provided otherwise. In 1782, a further act was passed, reënacting the former provision, with some additional provisions, amongst which is this : " And the said court shall have power to issue all writs of prohibition and mandamus, according to the law of the land, to all courts of inferior judiciary powers." *St.* 1782, *c.* 9, § 2.

The Rev. Sts. *c.* 81, § 4, provide, that the justices of the supreme judicial court " shall have the general superintendence of all courts of inferior jurisdiction, to prevent and correct er-

rors and abuses therein, where no other remedy is expressly pro-
vided by law." And by § 5, " they shall have power to issue
writs of error, certiorari, mandamus, prohibition and quo war-
ranto, and all other writs and processes, to courts of inferior ju-
risdiction, to corporations and individuals, that shall be necessary
to the furtherance of justice and the regular execution of the
laws." Whilst, therefore, it thus appears that the power of the
court is ample to issue writs of prohibition, upon proper and ne-
cessary occasions, yet like the other prerogative writs with
which it is associated, it is to be used with great caution and for-
bearance, for the furtherance of justice, and for securing order
and regularity in all the tribunals, when there is no other regular
and ordinary remedy.

But though the power of issuing writs of prohibition is thus
conferred by statute, yet the statute does not define the cases,
or the modes in which this power is to be exercised. For this,
as in many other cases of powers given by statute, we are refer-
red to that great repository of rules and precedents, the com-
mon law ; which, being in force before the adoption of the con-
stitution, was wisely adopted and continued in force by the pro-
vision of the constitution, *c.* vi. art. 6, that all laws, adopted,
used and approved in the colony, province, or state of Massa-
chusetts, and usually practised on in the courts of law, should
remain in full force, until altered or repealed by the legislature
This of course applied to all that part of the common law,
which was adapted to our state and condition, which had been
expressly or tacitly adopted by our ancestors, as the exigencies
of their social condition required, and which were not repugnant
to the constitution. That this portion included all those parts
of the common law, designed to regulate the administration of
justice, and produce a uniform and harmonious action amongst
all the judicial tribunals, is manifest from the provincial statutes,
giving the same power to issue writs of mandamus, prohibition
and certiorari, which in the same manner referred to the com-
mon law, for their meaning and legal effect.

On referring to the common law, we find that the object of
the writ of prohibition is to restrain and prevent a court of pe-

culiar, limited or inferior jurisdiction, from taking judicial cog-
nizance of cases not within their jurisdiction. It usually issues
from the court of king's bench, and is directed to the judge and
parties of a suit in an inferior court, commanding them to cease
from the prosecution thereof, upon a suggestion, either that the
cause originally, or some collateral matter arising therein, does
not belong to that jurisdiction. 3 Bl. Com. 112.

Beyond these two grounds, it seems, the court will not inter-
fere ; and when the matter is within the general jurisdiction of
the court below, and in the conduct of the trial, they have not ex-
ceeded their authority, the court above will not, on an application
for a prohibition, inquire whether they have decided right or not
on the merits. *Grant* v. *Gould*, 2 H. B. 100. *The State* v.
*Wakely*, 2 Nott & McCord, 410. *The People* v. *Seward*, 7
Wend. 518. Such being the nature and purposes of the pro-
ceeding by prohibition, it is obvious that it can only be interpos-
ed, in a clear case of excess of jurisdiction, on the part of some
judicial tribunal.

The present is an application for a prohibition to a militia
court martial, ordered and organized to try the petitioner upon
certain charges and specifications thereof ; and being made in
the outset, before that court has proceeded to the consideration
of any other question than that of its jurisdiction, unless it ap-
pears upon the face of the proceedings that the court has no
jurisdiction of any part of the subject matter of these charges, it
is not a case for a prohibition.

A court martial is usually resorted to for the trial of offences
of a purely military nature, or those made triable by a court mar-
tial by positive law ; and we are not to presume that such court
will exceed their jurisdiction, unless it is manifestly shown. In
the present case, we are called upon, from an examination of the
complaint, upon which the trial of the petitioner has thus far
proceeded, to declare that no part of the matter of that com-
plaint is within the jurisdiction of a militia court martial, and
that the offence, with which he is thereby charged, if it be an of-
fence triable and punishable by law, is purely of a civil nature,
to be prosecuted in the ordinary civil tribunals. This charge

is, neglect of duty in not making his certificate and return, with in the time required by law, and neglect and misconduct, charged in several different forms, in certifying that a number of the members of his company had, during the year, performed all the duties required by the last militia law, to entitle them to receive the reward or compensation provided by law, who in fact had not performed such duties, and were not so entitled ; and so that such certificate was false, and the public were thereby defrauded.

It is to be considered that the certificate required to be given by the commanding officers of companies, on or before the 1st of November of each year, seems to be made by the law conclusive evidence of the fact therein stated, and of the title of the men therein named to the bounty of five dollars ; and that the treasurers of towns are to pay the same, upon the authority of such certificate, without further inquiry into the truth of the fact certified. *St.* 1840, c. 92, §§ 14, 15. By § 25 of the same act, every non-commissioned officer, musician and private, who shall unnecessarily neglect to appear on the appointed days, shall not only forfeit his annual pay, but shall also incur a fine ; so that the duty of making such certificate, and of making it truly, is a very important one, devolving upon the captain or commanding officer of a company, and one deeply affecting the rights of the persons concerned, and of the public. The charge against the petitioner is, for the neglect and breach of this military duty ; and the objection is, that if punishable at all, it is to be prosecuted in a civil tribunal, and is not cognizable by a court martial.

In looking at this statute of 1840, it will be found that a great variety of duties are imposed upon various officers, civil and military. Section 10 directs that all officers named in the act, who shall neglect or refuse to obey any of its provisions, shall forfeit a sum not more than $500, nor less than $20, for each offence, to be recovered in any court, having competent jurisdiction. The statute thus treats each neglect and breach of duty under it as an offence, and provides for the prosecution and punishment of all *civil* officers offending ; but it provides no mode for

the trial and punishment of *military* officers for similar offences. This carries a strong implication, that in the judgment of the legislature, the trial and punishment of military officers was provided for by some previous and different law. We are then carried back to the revised statutes to see how the offences of military officers are to be tried and punished.

The 12th chapter of the revised statutes, which was a general revision of the militia laws, made a provision, in § 125, for a similar compensation to non-commissioned officers and soldiers, and provided for the performance of a like duty by the commanding officers of companies by certifying truly the names of their men, entitled to such bounty ; and the non-performance of this duty subjected the commanding officer to a specific pecuniary penalty. But by *St.* 1839, *c.* 163, this entire 125th section of the Rev. Sts. *c.* 12, allowing a compensation to soldiers, and requiring commanding officers to certify, was in terms repealed, and with it fell that part of the 101st section, which imposed a penalty for the breach of that duty. One question which has been discussed is, whether this part of the revised statutes is revived by the repealing clause of *St.* of 1840, in repealing that of 1839. The last section of *St.* of 1840, repeals all acts and parts of acts inconsistent with the provisions of that act. This does not, in terms, repeal the repealing act of 1839, and we think it does not do this by implication. This clause in a statute, repealing all inconsistent acts, is itself nearly useless, inasmuch as all inconsistent previous legislative provisions must necessarily yield to every new law, without such clause. But we think they are not repugnant, and that the repealing act of 1839 and all the provisions of that of 1840 may well stand together. It is true that the statute of 1839 abolished the bounty to soldiers, and that that of 1840 gave a similar bounty ; but this was so done, not by reviving the provision of the revised statutes, but by a new substantive legislative enactment, operating with the same effect, as if no similar law had ever previously existed. The result is, that § 125, and part of § 101 of Rev. Sts. *c.* 12, imposing a specific pecuniary penalty, was not revived and restored by the statute of 1840.

We are then led to inquire whether any of the unrepealed parts of the Rev. Sts. *c.* 12, reach this case. No part of that chapter was repealed by that of 1839, except § 125, and some provisions respecting compensation to certain officers, not material to the present question. By § 119, which remains in full force, every commissioned officer shall be liable to be tried by a court martial for the *offences* therein enumerated. One of them is " for neglect of any of the duties required in this chapter." Neglect of duty is thereby treated as a military offence for which a commissioned officer is liable to be tried by a court martial ; and other sections show what is the power and jurisdiction of a court martial. We are aware that the literal phraseology is, " duties required in this chapter ; " and the question is, whether it shall extend to duties required by a subsequent additional act. At the time when the revised statutes were passed, all the militia laws were revised, all former acts were repealed, and of course all military duties, required of the citizen, were prescribed by that chapter. The language therefore, at the time, was equivalent to the words, " any military duties," or " all military duties." By the statute of 1840, which was entitled " an act in addition to the several acts concerning the militia," although the specific provision of the revised statutes in regard to the compensation of soldiers, and the certificate of commanders was not revived, yet a provision for a compensation to soldiers was made, and a duty was imposed upon such commanding officer of a company, to make a true certificate of facts. This was a duty devolving upon such commander as a military officer, the faithful performance of which highly concerned the honor of the militia, and the pecuniary interests of the citizens and of the public, the neglect of which was of the same nature with those mentioned in § 119 of Rev. Sts. *c.* 12, for which a commissioned officer is liable to be tried by a court martial. A mode of punishing all neglect of duty by civil officers is prescribed, to be prosecuted by courts of civil jurisdiction; and this, in the absence of any provision in regard to military officers, leaves a strong implication, that they were to be proceeded against in a different mode, and before a court of military jurisdiction. Con-

sidering that when the revised statutes were passed, the 12th chapter embraced the whole range of military duties, that it still remains the basis of the whole militia system, and that subsequent acts in *pari materia* are in fact, as well as in terms, additions to that chapter, it seems that the language should not be so literally construed as to confine the act to the specific duties enumerated in that chapter, but extended, by a reasonable construction, to the breach of similar duties, prescribed by such additional acts. When therefore the legislature prescribed a duty similar to those enumerated in the revised statutes, by an additional act, and prescribed no mode of punishing the neglect of such duty by military officers, the reasonable conclusion is, that they understood and intended, that it should be tried and punished by a court martial, in the manner already provided for, in the revised statutes. We are therefore of opinion, that so far as the charges and specifications exhibited against the petitioner impute to him neglect and breach of duty, as a commissioned military officer, the court martial has jurisdiction of the subject, and that the writ of prohibition must be dismissed.

*I. J. Austin,* for the petitioner.

*Codman,* (Judge Advocate,) *contra.*